UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGR                                              Date: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

Present: **Honorable JOSEPHINE L. STATON, UNITED STATES DISTRICT JUDGE**

| Terry Guerrero | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:   ATTORNEYS PRESENT FOR DEFENDANT:

Not Present                                                                 Not Present

**PROCEEDINGS:**   **(IN CHAMBERS) ORDER GRANTING PLAINTIFF'S MOTION TO ENTER CONSENT DECREE (Doc. 16)**

Before the Court is Plaintiff Alfonso Lares's Motion to Enter Consent Decree. (Mot., Doc. 16.) Intervenor the United States filed an opposition. (Opp., Doc. 21.)[1] Plaintiff filed a reply (Reply, Doc. 22.) The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. R. 7-15. Accordingly, the hearing set for October 19, 2018, at 2:30 p.m. is removed from the calendar. For the reasons given below, the Court GRANTS Plaintiff's Motion.

**I.      Background**

Defendant Reliable Wholesale Lumber, Inc. owns and operates a combination sawmill, planing mill and lumber yard located at 1450 Citrus St., Riverside, California (the "Facility"). (Ex. 1 to Smith Decl., Revised Proposed Consent Decree ("RPCD"), Doc 18-1 at 2.) Stormwater and other discharges from the Facility are subject to a National Pollutant Discharge Elimination System General Permit, as amended (the "Permit") in accordance with the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* ("Clean Water Act" or "CWA"). (*Id.*) Plaintiff is a California citizen who uses and enjoys the Santa Ana River and other waters in the Santa Ana River Watershed.

---

[1] The Court granted the United States leave to intervene for the limited purpose of addressing entry of the Consent Decree. (Doc. 20.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGR                             Date: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

(Compl., Doc. 1 ¶ 9.)  On December 1, 2016, Plaintiff sent Defendant a Notice of Violation and Intent to File Suit under the Clean Water Act (the "NOV") alleging unlawful discharges by Defendant into the Santa Ana River Watershed and failure by Defendant to lawfully monitor and manage stormwater runoff.  (Ex. 1 to Compl., Doc. 1-1.)  Plaintiff concurrently delivered copies of the NOV to the United States Environmental Protection Agency, the California State Water Resources Control Board, and the Santa Ana Water Quality Control Board.  (RPCD at 2.)  The parties then undertook extensive pre-litigation investigation of the claims and settlement negotiations. (*See, e.g.*, Smith Decl., Doc. 18 ¶ 17; Ex. 8 to Smith Decl., Report of Mainline Environmental, Doc. 18-8.)

On January 29, 2018, Plaintiff filed a complaint alleging four causes of action, all mirroring the allegations made in the NOV: (1) unlawful discharges; (2) failure to implement practices to curtail pollutant discharges; (3) failure to develop and implement an adequate Stormwater Pollution Prevention Plan ("SWPPP"); and (4) failure to develop and implement an adequate monitoring and reporting program.  (Compl. ¶¶ 79-112.)  Shortly thereafter, on February 12, 2018, Plaintiff filed a Notice of Settlement and Proposed Consent Decree, triggering a 45-day period for review by the United States pursuant 33 U.S.C. § 1365(c)(3).[2]  (Doc. 10.)  Upon completing its review, the United States filed a Statement of Concern taking issue with several aspects of the RPCD, including: (1) Plaintiff's counsel's *modus operandi* with respect to CWA suits; (2) the limited scope and enforceability of the proposed injunctive relief; (3) the strength of the underlying claims; and (4) the reasonableness of Plaintiff's counsel's attorneys' fees. (Doc. 14.)  In response to the Statement of Concern, the Court ordered Plaintiff to file a motion to enter the RPCD "that demonstrates:

> 1) Plaintiff Lares meets the requirements of Article III and Clean Water Act citizen-suit prudential standing;

---

[2] The review period was twice extended. (*See* Docs. 11, 13.)  The RPCD is the result of revisions made to the initial Proposed Consent Decree during the review period after the United States advised Plaintiff of concern with a certain payment included in the initial Proposed Consent Decree.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGR                                           Date: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

    2) the specific and separate factual basis for each of Plaintiff's four causes of action and how those allegations result in actual violations of the Clean Water Act;
    3) how the injunctive relief described in the Proposed Consent Decree furthers the goals of the Clean Water Act;
    4) the relationship between the violations being enforced and the proposed environmental project;
    5) how the requirements of the Proposed Consent Decree will be enforced; and,
    6) the reasonableness of the proposed settlement of attorneys' fees and costs."
(Order, Doc. 15 at 1-2.)  Plaintiff's Motion now responds to that Order.

## II.  Legal Standard

    Consent decrees are hybrids of private settlement agreements and public judgements.  *Sierra Club, Inc. v. Electronic Controls Design, Inc.*, 909 F.2d 1350, 1355 (9th Cir. 1990).  Respecting the parties' negotiations, "a district court should enter a proposed consent [decree] if the court decides that it is fair, reasonable and equitable and does not violate the law or public policy."  *Id.* (citing *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1125-26 (D.C. Cir. 1983).  That is, "the focus of the court's attention in assessing the agreement should be the purposes which the statute is intended to serve, rather than the interests of each party to the settlement."  *Citizens for a Better Environment*, 718 F.2d at 1125.  Hence, "[a]s long as the consent decree comes 'within the general scope of the case made by the pleadings,' furthers 'the objectives upon which the law is based,' and does not 'violate the statute upon which the complaint was based,' the parties' agreement may be entered by the court."  *Sierra Club*, 909 F.2d at 1355 (quoting *Local No. 93, Int'l Ass'n of Firefighters, AFL-CIO v. City of Cleveland*, 478 U.S. 501, 525-26 (1986)).
    However, "a consent decree that affects the public interest or third parties imposes a heightened responsibility on the court to protect those interests."  *United States v. State of Oregon*, 913 F.2d 576, 581 (9th Cir. 1990).  To fulfill the public interest objectives of the CWA, a consent decree must actually further public environmental preservation.  Courts should be skeptical of agreements which award plaintiffs and their counsel fees or other private gain but lack substantial injunctive relief or enforcement mechanisms.  *See Staton v. Boeing Co.*, 327 F.3d 938, 952–53 (9th Cir. 2003).  This skepticism was the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGR                          Date: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

impetus for the Court's Order requiring that Plaintiff describe specifically how the RPCD will promote a cleaner Santa Ana River; four of the Order's six criteria addressed the relationship between the alleged violations and the RPCD's purported remedies.

### III.     Discussion

Plaintiff's Motion satisfies the Court's request for more information and demonstrates the propriety and utility of the RPCD. First, Plaintiff adequately lays out ample factual bases for each of his claims. Were the allegations of environmental degradation merely "generalized and conclusory," lacking specific facts indicative of potential CWA violations, then the Court would question the RPCD's ability to remedy such nebulously-defined harm. (Statement of Concern at 25-26.) Here, however, the Complaint, the NOV, and the Motion plainly detail specific instances of action (or failures to act) that are ripe for injunctive relief. (*See, e.g.*, Compl. ¶¶ 63-78; NOV at 3-8; Mainline Report at 1-2.) Indeed, the record shows that measures adopted by Defendant as a result of settlement negotiations in this case are already having positive effects. (Ex. 30 to Smith Decl., Expert Report of George Caamano, Doc. 18-30 at 3.) The Court is satisfied that continued implementation and enforcement of these measures through the RPCD will promote the public interest in a cleaner Santa Ana River Watershed.

Curiously, the United States appears to have abandoned its position that Plaintiff's alleged facts are too imprecise to form the basis for specific injunctive relief. Instead, the Opposition contends that the alleged environmentally damaging conduct may not amount to *legal* liability. (Opp. at 5-11.)³ But determinations of litigation risk are predominantly private assessments best left to the parties; the Court's duty today is to ensure that the public's interest in pollution-free waterways is furthered by an otherwise private agreement. *State of Oregon*, 913 F.2d at 581 (noting heightened review of a consent decree "is intended to protect those who did *not* participate in negotiating the

---

³ More curious still, the United States does not contend that the supposed weakness of Plaintiff's claims should erode confidence in the robustness of the RPCD's environmental protections. Rather, the Opposition cites this perceived weakness only as a reason to reduce Plaintiff's counsel's fees. (*See id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGRDate: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

compromise, not those who negotiated it") (emphasis original).[4] Here, Defendant elected not to litigate the strength of Plaintiff's factual allegations, and the Court will not second-guess that determination.

The injunctive relief ordered by the RPCD is both specific and substantial. Among other environmental protections, the RPCD overhauls Defendant's allegedly noncompliant SWPPP and implements many best-practices for stormwater management, including a vacuum truck to clean up contaminated debris and filters on downspouts to prevent certain discharges. (*See generally* RPCD.) It also requires Defendant to implement cleaning, training and reporting programs to facilitate compliance, as well as continued monitoring and inspection by Plaintiff and a Qualified Industrial Stormwater Practitioner. (*Id*.) The Court is confident these comprehensive measures will promote the public interest and are more than just lip-service to a cleaner environment.

The United States spends the bulk of its Opposition attacking Plaintiff's counsel's fees awarded by the RPCD, insisting the award is unjustified due to (1) the weakness of Plaintiff's claims, (2) inflated hours, and (3) inflated rates. (*See* Opp. at 4-22.) As noted above, the Court is not inclined to second-guess a sophisticated defendant's own assessment of liability *sua sponte*. Indeed, that the RPCD awards Plaintiff's attorneys just 51% of their claimed lodestar suggests that Defendant−represented by competent, experienced counsel−exercised considerable leverage during negotiations.[5] Moreover, the United States' arguments against Plaintiff's counsel's fees are, frankly, scattershot. First, the United States does not address the already-negotiated fee reduction. Additionally, the government cites authority for using the seat of the District Court as the relevant community for determining reasonable hourly rates, but then avers that Plaintiff's counsel's main office location in Pennsylvania should affect rates commanded by attorneys working out of an office in the Los Angeles metropolitan area on a matter

---

[4] "Furthermore, the court need not require that the decree be 'in the public's *best* interest' if it is otherwise reasonable. *Id.* (quoting *Securities and Exchange Commission v. Randolph,* 736 F.2d 525, 529 (9th Cir. 1984) (emphasis original).

[5] Plaintiff's counsel provided time summaries and lodestar calculations totaling $105,593.25 in attorney fees. (Smith Decl. ¶ 29; Ex. 43 to Smith Decl., Doc. 18-43.) The RPCD awards Plaintiff's counsel $54,000 to reimburse fees and costs, which is approximately 51% of what Plaintiff asserts is the full lodestar amount. (RPCD at 10.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 8:18-cv-0157-JLS-AGR  Date: October 18, 2018
Title: Alfonso Lares v. Reliable Wholesale Lumber, Inc.

before this Court. (Opp. at 15-16 (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 454 (9th Cir. 2010)).) Finally, the United States questions the number of hours submitted by Plaintiff's counsel based on an incomplete review of the facts.[6]

Regardless, the Court need not enter the minefield of hours, rates, and lodestar calculations and adjustments because no fee petition is at issue. *Cf. Staton*, 327 F.3d at 945 ("[T]o obtain fees justified on a common fund basis, the class's lawyers must ordinarily petition the court for an award of fees, separate from and subsequent to settlement."). In the context of the time, effort and skill needed to negotiate the RPCD, and in proportion to the relief achieved, the Court finds a $54,000 award both reasonable and consistent with public policy.

The United States' argument that the RPCD should be amended to resolve latent ambiguities is unavailing. The parties have not raised concerns with the document's clarity and the mere possibility of a future dispute over its terms is not enough for the Court to compel them to revisit their duly-negotiated agreement.

**IV.  Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Enter Consent Decree. Plaintiff is further ORDERED to submit the RPCD, in final form suitable for the Court's signature, with the Clerk within five (5) days of the date of this Order.

Initials of Preparer:  gga

---

[6] In attacking Plaintiff's counsel's claimed hours, the government insists that the bulk of relief was achieved very quickly. (*Id.* at 11.) This assertion focuses on a revision log that shows Defendant's SWPPP was updated just three weeks after Plaintiff filed the NOV in December 2016. (*Id.*) Plaintiff, however, catalogues a year-long process of negotiation and implementation that culminated with a substantially overhauled SWPPP in December 2017. (*See, e.g.*, Reply at 2 (describing revision history of Defendant's SWPPP); Caamano Report at 2.)